1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICENTE BUENROSTRO )<br>)<br>Petitioner, )<br>v. )<br>)<br>MARION SPEARMAN, WARDEN, SOLEDAD)<br>CORRECTIONAL TRAINING FACILITY )<br>)<br>Respondent. )<br>_____ | Civil Case No.: 14-CV-3166-LHK<br><br>ORDER DENYING PETITIONER'S<br>PETITION FOR A WRIT OF HABEAS<br>CORPUS UNDER 28 U.S.C. § 2254 |

Petitioner Vicente Buenrostro ("Petitioner") was convicted in Alameda County Superior

Court of two counts of continuous sexual abuse, with special allegations that the offenses involved

multiple victims; one count of oral copulation of a person under 14; and one count of sexual

penetration of a person under 14 by a foreign object. ECF No. 3, Ex. F.[1] at 1. The Superior Court

sentenced Petitioner to 18 years in state prison.

On July 14, 2014, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. §

2254 ("Petition"). Petitioner contends he is entitled to habeas relief because Petitioner's counsel, as

well as the prosecution and the Superior Court, all affirmatively misled him about his sentencing

exposure by miscalculating Petitioner's maximum possible sentence. Petitioner contends that, had it

---

[1] Unless otherwise noted, all Exhibits are attached to the Declaration of Raphael Goldman
submitted in Support of the Petition for a writ of habeas Corpus. ECF No. 3.

not been for this miscalculation, Petitioner would have been able to secure a plea agreement that was more favorable than the 18-year sentence he received after trial. ECF No. 2 at 2-3. Accordingly, Petitioner contends in the Petition that his right to effective assistance of counsel under the Sixth and Fourteenth Amendments, and his right to due process under the Fifth and Fourteenth Amendments both were violated by the miscalculation of his sentencing exposure. *Id.* at 2.

Petitioner has presented each of these claims to the California Court of Appeal ("Court of Appeal"). The Court of Appeal denied his claims. Ex. F. Petitioner asserts that it was error for the Court of Appeal to deny his claims, and that moreover, the Court of Appeal erred in making that decision without first holding an evidentiary hearing. ECF No. 1.

On August 13, 2014, the Court issued an Order to Show Cause why the writ of Habeas Corpus should not be granted. ECF No. 8. Respondent filed an Answer and a Memorandum of Points and Authorities in Support of Answer on December 14, 2014. ECF Nos. 11, 11-1. On January 6, 2015, Petitioner filed a Traverse to Response and Reply ("Traverse"). ECF No. 12.

## I.      BACKGROUND

### A.      Petitioner's Underlying Offense

Petitioner was charged in the Alameda County Superior Court with two counts of continuous sexual abuse, with special allegations that the offenses involved multiple victims; one count of oral copulation of a person under 14; and one count of sexual penetration of a person under 14 by a foreign object. ECF No. 3, Ex. F. at 1.

The facts underlying these charges were found at trial as follows[2]: the victims are sisters, A. Doe and S. Doe. They received afterschool care for the following years from a neighbor, Petitioner's wife Simona Buenrostro: A. Doe from first to sixth grades, S. Doe from the age of one

---

[2] The Court of Appeal provided a lengthy summary of the offenses in its Order. *See* Ex. F. While the underlying facts are not the direct subject of the Petition, they are relevant to understanding the context of the prosecutor's plea bargaining stance, which is directly at issue in the Petition.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

United States District Court
For the Northern District of California

through the fourth grade. In 2010, when S. Doe was in the seventh grade, the sisters revealed to family members Petitioner's repeated sexual abuse. A. Doe, who was 18 years old at the time of trial, testified that Petitioner asked her to help him with something in the backyard shed of Petitioner's home when A. Doe was about six years old. When they entered the shed Petitioner put her on the table, took his penis out of his pants, and started touching the inside of her legs over her clothes. Petitioner grabbed her hand and held it on his erect penis while he rubbed it. Over the next three years, until A. Doe was nine, Petitioner took A. Doe into the shed five or six times more times and continued with the same type of inappropriate touching.

S. Doe, 13 years old at the time of trial, testified Petitioner asked her to help him with something in the shed when she was in kindergarten. Once inside, he closed the door and put S. Doe on the table. Petitioner pulled down her pants and underwear and started touching her vaginal area with one hand, with the other hand in his pants. S. Doe testified that Petitioner took her into the shed more than five times while she was still in kindergarten. S. Doe further testified that when she was in the first grade, Petitioner took her into the shed by herself and touched her vagina "way more than" 12 times. On some of those occasions Petitioner would also touch his exposed penis or grab S. Doe's hand and rub it back and forth on his penis.

From the time S. Doe was in kindergarten through the second grade, Petitioner took both sisters into the shed together and touched each one in a manner similar to the one described above, about six or seven times. Petitioner continued to touch S. Doe in the shed until she was in the fourth grade. The last time Petitioner touched S. Doe he also put his finger inside her vagina and kept it there for three minutes and grabbed her cheeks and forced his penis into her mouth for a short time.

At trial, the prosecution also presented the testimony of the younger sister of the victims, M. Doe, who testified that defendant twice exposed himself to her before she started kindergarten, but that no touching was involved.

**B.    Petitioner's Pre-trial Plea Negotiations**

Petitioner was originally charged with multiple victim enhancements as to all four counts,

United States District Court
For the Northern District of California

1  pursuant to Cal. Penal Code §§ 667.6(d), 667.61(c), and 667.61 (e)(5). Section 667.6(d) mandates a

2  full, separate, and consecutive term for enumerated crimes involving separate victims. Section

3  667.61(b) mandates an indeterminate sentence of 15 years to life for offenses that qualify under

4  subdivisions (c) and (e). Subsequently the prosecutor amended the information to allege those

5  enhancements only as to the two counts of continuous sexual abuse.

6          Prior to trial, the prosecutor, Susan Torrence ("Ms. Torrence"); defense counsel, Jamil

7  Karwash ("Mr. Karwash"); and the trial court all operated under the assumption that the

8  enhancements applied to the charges as alleged. With the enhancements, if Petitioner were to have

9  been convicted of all counts he would have been subject to a mandatory sentence of at least 30

10  years to life and would have had to serve 40 years before he was eligible for parole. *See* Ex. A,

11  Reporter's Transcript ("RT") 108-110. Petitioner was advised of these terms on the record by the

12  trial court and the prosecutor, and Mr. Karwash made no objection to the advisement. *Id.*

13          Before the preliminary hearing, the prosecutor made a plea bargain offer to Petitioner of a

14  determinate term of 24 years. *See* RT 110. Petitioner apparently did not accept or decline the

15  offer at that time. According to the allegations in the Declaration of Mr. Karwash, after the

16  amended information was filed, the trial court "encouraged plea negotiations and Ms. Torrence

17  invited me to make a counteroffer." Ex. A to Ex. C[3], at ¶ 4. Petitioner was "unwilling to accept" a

18  24-year sentence, "in part" because of his age, which was then 68. Ex. C to Ex. C at ¶ 7.

19  Petitioner authorized defense counsel to make a counteroffer of 10 years. Ex. A to Ex. C, at ¶ 4.

20          The prosecutor responded to Petitioner's counteroffer of 10 years by stating that she would

21  confer with the victims' family. She subsequently told Mr. Karwash that after speaking to the

22  complaining witnesses she would not reduce her offer of a 24-year determinate prison term. *Id.*

23  Petitioner declined that offer and proceeded to trial. *Id.* at ¶ 5.

24  **C.      Petitioner's Sentencing**

25          On May 31, 2011, an Alameda County jury convicted Petitioner on all counts. Ex.

26

27  [3] Petitioner's Brief to the Court of Appeal is appended as Exhibit C to the Goldman Declaration.
ECF No. 3. Three declarations were attached to that brief. These declarations were denominated

28  Exhibits A-C. For that reason the current Exhibit C contains within it Exhibits A-C, referenced
here.

4

A, Clerk's Transcript ("CT") 358-363.

After the jury convicted Petitioner, Mr. Karwash realized for the first time that the multiple victim enhancements sought against his client were precluded by the *ex post facto* clause, because the sentencing enhancements took effect in 2006, but Petitioner's offenses had occurred between 1997 and 2005, before the enhancements took effect. CT 380-382; Ex. A to Ex. C, at ¶ 6. Counsel Karwash explained the error to the trial court (Judge Kurtz presiding) in his sentencing letter dated July 24, 2011. *Id.*

The prosecutor responded to the defense sentencing letter on July 29, 2011. In the response, the prosecutor took the position that even if the enhancements were barred, the court could and should still order consecutive sentences under the discretionary scheme of Penal Code 667.61(c). The prosecutor indicated in the sentencing filing that, were the court to choose a determinate sentencing scheme, the People would seek to have the court impose "high" level and consecutive terms for a total sentence of 42 years. The prosecutor also noted that "[a]s is always the case with child victims, the most vulnerable and most in need of protection and vindication in our society, the victims in this case, I know, will be requesting the imposition of the maximum allowable penalty at the sentencing hearing." CT 386-391.

At Petitioner's sentencing, the court also had before it the Probation Officer's Report and Recommendation. CT 401. The Probation Report was created after Petitioner was convicted. The Probation Officer's Report notes that in regard to plea negotiations, Petitioner told the Probation Officer that Petitioner "didn't accept an offer because [he was] not guilty." CT 405. The Probation Report also includes Petitioner's statement to the Probation Officer that: "If I am found guilty it is because a [sic] grand injustice. I will appeal this because this is not fair that this is happening to me...They are all lying." 405. Petitioner reportedly also insisted at that time that "he never even had a relationship with the victims and that the most he ever said to them was hello." CT 409. The Probation Report found several aggravating factors to be considered in sentencing Petitioner, including that the crime involved "a high degree of cruelty, viciousness and callousness" given the repeated nature of the crime and the age of the victims, and also that Petitioner "takes no responsibility for his actions and has no remorse towards the victims." CT 408-09.

5

1       The issue of the possible *ex post facto* application of the enhancements was discussed at the

2   sentencing hearing on July 28, 2011.[4] The trial court held that the enhancements were barred under

3   the *ex post facto* law. Sentencing Transcript ("ST") 1335-1336. At the sentencing hearing, Mr.

4   Karwash requested that the court impose a sentence of 6 years' imprisonment. Mr. Karwash argued

5   that Petitioner's age and lack of criminal record should be taken into consideration in mitigation of

6   his sentence as well as the testimony at the sentencing hearing from Petitioner's family that

7   Petitioner was a good person.

8       At sentencing, both parents of the victims, as well as one of the victims herself spoke. The

9   prosecutor also read into the record a statement from the other victim. ST 1326:18-1329-20. The

10  victims' mother stated that Petitioner "needs to stay in prison for the rest of his life." *Id*. at 1327:12-

11  13. One of the victims, S. Doe stated at the sentencing hearing that "this filthy monster should get

12  as many years as possible." *Id*. at 1327:24-25. The prosecutor also read into the record a letter from

13  victim A. Doe. In the letter, A. Doe acknowledged that coming to court had been hard on them, but

14  that she was glad to have closure. She also stated that "[a]s far as sentencing, I believe [Petitioner]

15  should get the maximum time [he] can get." *Id*. at 1329:17-20.

16      Even acknowledging the unavailability of the enhancements because of the *ex post facto*

17  clause, the prosecutor still argued that the trial court should impose the "high" level sentence for all

18  four counts, and she requested that the court impose "an absolute minimum of 24 years." ST 1334-

19  1335. The prosecutor stated that "anything less is not reflective of what these victims have gone

20  through and does not give them the justice that they deserve." *Id*.

21      The trial court then turned to the sentencing calculation. The court started with the

22  presumption that, absent extreme circumstances either mitigating or exacerbating the conduct, the

23  majority of defendants should be sentenced using the midterm of the sentences available. The court

24  noted that the particular criminal acts at issue occurred over a long period of time and with very

25  vulnerable victims, and that there were aspects of the crime that were "despicable." Ultimately,

26

_____

27  [4] Petitioner's current counsel, Ted Cassman and Raphael Goldman, assisted Mr. Karwash at the
    Sentencing Hearing. Sentencing Transcript at 1318:9-17. While Mr. Karwash took the laboring oar
28  in the proceeding, after the court had imposed the sentence, Mr. Cassman objected to the court not
    having imposed a low term sentence, and also to the court's imposition of consecutive sentences.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

1    however, the court found that neither the aggravating or mitigating factors were particularly

2    persuasive. Therefore, on Count 1, the court sentenced Petitioner to the midterm of 12 years in

3    state prison. The court found that Count 2 should run consecutively, for an additional 4 years. For

4    Count 3, the court imposed an additional 2 years to be served consecutively. The court found that

5    Count 4 was "part and parcel" of the events covered by Count 3, so while he ordered 2 years for

6    Count 4, the court ordered those two years to be served concurrently with Count 3.  The ultimate

7    sentence imposed by the trial court was a term of 18 years in prison. ST 1338-1341

8         **D.      Petitioner's Post-Trial Filings**

9         Petitioner appealed his conviction. He also filed a petition for a writ of habeas corpus in the

10   state court. Exs. B, C. In his appeal, Petitioner argued that his counsel's erroneous advice on

11   Petitioner's sentencing exposure violated Petitioner's right to effective assistance of counsel.

12   Petitioner additionally argued on appeal that the State also had misinformed him of his sentencing

13   exposure, and that he had therefore been deprived of due process. Ex. B. Petitioner's Habeas

14   Petition raised the same arguments. Ex. C.

15        In support of his direct appeal, Petitioner submitted three declarations. Petitioner submitted

16   a declaration from his trial counsel, Mr. Karwash, in which Mr. Karwash conceded that he had

17   misunderstood his client's sentencing exposure during plea negotiations. Petitioner also submitted a

18   declaration from attorney Michael Thorman ("Mr. Thorman"), a criminal defense attorney of 38

19   years' experience who practices in Alameda County. Mr. Thorman states that he has "represented

20   many clients in the courtroom of . . . Judge Robert Kurtz." Mr. Thorman has "represented

21   numerous defendants in connection with felony sex cases venued in the Alameda County Superior

22   Court, Hayward Branch." In each case, he "conducted plea negotiations with the Alameda County

23   District Attorney's Office," and he "believe[s] that experience gives [him] a strong understanding

24   of the potential outcomes a defendant in such a case could expect from the plea bargaining

25   process." Mr. Thorman "know[s]" Deputy District Attorney Torrence.

26        Mr. Thorman avers that he is familiar with the misunderstanding regarding the applicability

27   of the enhancements. He calculated Petitioner's true maximum sentence exposure as 24 years, and

28   concluded the 24-year plea-bargain offer from Ms. Torrence "makes no sense" given that 24 years

7

United States District Court
For the Northern District of California

is the maximum, and that "[t]he Alameda County District Attorney's Office traditionally has been willing to plea bargain in sex cases in an effort to save the victim from the stress and trauma created by having to appear as a witness at trial."

Mr. Thorman concludes: "[I]n my opinion, based on my experience as a criminal defender and trial attorney in Alameda County, if Ms. Torrence had understood . . . the true sentencing exposure [Petitioner] faced after trial, and the strong likelihood that fully consecutive sentences would not be imposed under the circumstances of this case, she would not have insisted on a plea bargain that would result in a 24-year prison term. Based upon my decades of experience negotiating felony cases—including sex cases—with the Alameda County District Attorney's Office, I believe that if Ms. Torrence had understood the true maximum penalty, she would likely have been willing to enter into a plea agreement that called for a prison sentence of less than 18 years and perhaps as low as 10 years." Mr. Thorman's declaration further states that "based upon [his] experience practicing before Judge Kurtz," he believed that had the parties "presented Judge Kurtz with a plea agreement that called for a prison sentence of between 10 and 18 years in length," the judge would have accepted the plea. Ex. B to Ex. C. at ¶ 10.

Finally, Petitioner submitted his own declaration in which he averred that he had rejected the prosecutor's plea offer of a 24 year prison term "[i]n part because of his age" but that he would have been willing to consider a negotiated disposition of the case.

On May 31, 2013, the Court of Appeal affirmed the judgment of conviction and denied the habeas corpus petition. Ex. F. On September 11, 2013, the California Supreme Court denied review of both proceedings. Ex. I.

### E.    The Court of Appeal's Decisions

The Court of Appeal addressed together the claims Petitioner raised on direct appeal and those Petitioner raised in his habeas corpus petition. The Court of Appeal concurred with the trial court that the multiple victim enhancements were precluded by the *ex post facto* clause. The Court of Appeal therefore found that counsel for Petitioner, as well as the prosecutor and the court, had all provided erroneous information to Petitioner that he faced a higher minimum sentence and a higher maximum sentence than he faced under the law applicable to his crimes when they were

8

committed. Ex. F at p. 10. The Court of Appeal concluded that Mr. Karwash's performance with

regard to the plea negotiations was deficient:

> With all respect to defense counsel, we must therefore conclude his performance was deficient. It is axiomatic that a defendant facing the decision whether to plead guilty or go to trial must have accurate information regarding his potential minimum and maximum sentences.

Ex. F at 11.

The Court of Appeal then considered whether Petitioner had established prejudice, stating:

> Assuming a defendant has made a showing of deficient performance of counsel, we must, nevertheless, affirm the conviction unless the deficient performance has been prejudicial—i.e., that but for counsel's deficient performance it is reasonably probable that the result of the trial would have been different. (Strickland, supra, 466 U.S. at p. 694; Anderson, supra, 25 Cal.4th at p. 569.) "A reasonable probability is a probability [that is] sufficient to undermine confidence in the outcome." (Strickland, supra, at p. 694.)

*Id.*

Applying the legal standard above, the Court of Appeal held that "[i]n the procedural

context of this case, defendant must show there is a reasonable probability he would have received

a more favorable result—i.e., he would have been offered a plea bargain, accepted it, and had it

accepted by the trial court, and under the terms of that plea offer he would have received a sentence

less than the 18 years he received after trial." *Id.* at 12 (citations omitted).

The Court of Appeal analyzed Petitioner's prejudice argument that, absent the

misunderstanding regarding the applicability of the enhancements, it is "likely" the prosecution

"would have offered a substantially more favorable plea bargain—almost certainly" less than the

18 years he received after trial. In doing so, the Court of Appeal specifically reviewed the evidence

in the record as well as the three declarations submitted by Petitioner. The Court of Appeal

considered Petitioner's declaration, and that of Mr. Karwash, regarding Petitioner's "interest[] in

reaching a negotiated disposition." The Court of Appeal also considered in detail the declaration of

Mr. Thorman, quoted above.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

United States District Court
For the Northern District of California

As a result of that review, the Court of Appeal concluded that:

We believe the declarations in support of the habeas petition, and the facts in the record on appeal, are insufficient to show a reasonable probability defendant would have received and accepted, and the trial court would have approved, a plea bargain offer of less than 18 years. In particular, Thorman's opinions are based on considerable speculation. While he knows Deputy District Attorney Torrence, and is familiar with the practices of the District Attorney's Office in general, he avers no facts about Torrence's professional standards or proclivities in plea negotiations in sex cases. He likewise avers no facts about the judicial standards of Judge Kurtz regarding his approval of plea agreements in sex cases. And it is sheer speculation any offer would have been less than the 18 years defendant received after trial.

We note that Torrence, in her sentencing memorandum, argued that even without the indeterminate sentence under the enhancement of section 667.61 defendant could, and should, be sentenced to 42 years. At the sentencing hearing, she noted the suffering of the victims, stated she saw "no factors . . . in mitigation," and argued for "an absolute minimum" of 24 years. There is little, if anything, to show a reasonable probability of a less-than-18-year offer. Moreover, defendant may not have accepted **any** offer because he maintained his innocence: after trial he told the probation officer the victims were lying and, "I didn't accept an offer because I am not guilty." This claim of innocence "may detract from the credibility of a hindsight claim that a rejected plea bargain would have been accepted had a single variable (sentencing advice) been different." (Alvernaz, supra, 2 Cal.4th at p. 940.)[5]

Defendant cannot show prejudice and, thus, has not made a sufficient showing, on both direct appeal and by the habeas corpus petition, of ineffective assistance of counsel. Thus, we reject this contention on appeal and, by separate order, deny the habeas petition without issuing an order to show cause.

Ex. F at 11-14, footnote and emphasis in original.

The Court of Appeal then turned its attention to Petitioner's Due Process claim. The Court of Appeal first noted the conflict in the California courts as to who bears the burden of proof on the issue of prejudice when a court is assessing due process violations. *See People v. Goodwillie*, 147 Cal.Ap.4th 695, 735 (2007); *but see People v. Miralrio*, 167 Cal.App.4th 448 (2008). The Court of Appeal declined to address the conflict between those two cases, found that such a decision was

---

[5] This passage is used as an example of defendant's protestations of innocence under oath. As noted, defendant did not testify. But *Alvernaz* states a reviewing court can take judicial notice of trial court proceedings, including a defendant's "trial stance." (*Alvernaz, supra,* 2 Cal.4th at p. 940.) In this case, that stance, as expressed to the probation officer and memorialized in an official document (the probation department sentencing report), was to reject a plea and go to trial because defendant believed he was innocent.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

1    unnecessary to the adjudication of the instant matter, and held that "the lack of prejudice to
2    [Petitioner] is manifest. There is simply no basis to conclude that he would have received and
3    accepted a court-approved plea offer of less than 18 years." Ex. F. at pp. 14-15.

4    **II.      DISCUSSION**

5         **A.       Habeas Corpus Review of State Court Decisions Generally**

6         This Court may entertain a petition for the writ of habeas corpus "on behalf of a person in
7    custody pursuant to the judgment of a state court only on the ground that he is in custody in
8    violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A
9    district court may only grant a habeas writ petition under § 2254 if the state court's adjudication of
10   the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application
11   of, clearly established federal law, as determined by the Supreme Court of the United States; or (2)
12   resulted in a decision that was based on an unreasonable determination of the facts in light of the
13   evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

14        "The question under AEDPA is not whether a federal court believes the state court's
15   determination was incorrect but whether that determination was unreasonable—a substantially
16   higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This high standard is meant to
17   be "difficult to meet," because "the purpose of AEDPA is to ensure that federal habeas relief
18   functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a
19   means of error correction." *Greene v. Fisher*, 132 S.Ct. 38, 43-4 (2011), citations omitted.

20        **B.       Review of the Ineffective Assistance of Counsel Claim**

21        The Court of Appeal held that the performance of Petitioner's counsel was deficient.
22   However, the Court of Appeal also found that Petitioner had not established a *prima facie* case of
23   prejudice stemming from the deficient performance, as required under the second prong of
24   *Strickland. Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Therefore, the Court of
25   Appeal denied Petitioner's direct appeal and Petitioner's request for a writ of habeas corpus,
26   without issuing an order to show cause.

27

28

Respondent concedes that the only question before this Court on the ineffective assistance of counsel claim is whether the Court of Appeal's determination that Petitioner failed to establish prejudice under the second prong of *Strickland* was an objectively reasonable conclusion.

In an initial state appellate court challenge, a petitioner bears the burden of showing both that counsel's performance fell below an objective standard of reasonableness, and also that there was a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). However, in a federal habeas based on ineffective assistance of counsel, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly." Instead, petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-699 (2002). *Woodford v. Visciotti*, 537 U.S. 19, 26-27 (2002)(deferring to state court's conclusion that defendant was not prejudiced by counsel's errors); *see also Harrington v. Richter*, 562 U.S. 86 (2011)(a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself).

Exactly what level of deference is to be accorded to the Court of Appeal's factual and legal findings, where, as here, the Court of Appeal has not held an evidentiary hearing, is a matter of dispute between the parties. Respondent asserts that this Court in undertaking its federal habeas review must use "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013); *accord Bell v. Cone*, 535 U.S. 685, 698-699 (2002).

The Petitioner makes several variants of the argument that this Court may, and should, ignore the Court of Appeal's decision. Petitioner first asserts that this Court owes no deference to

12

1   any purported "factual findings" of the Court of Appeal because "the state court refused to grant an

2   evidentiary hearing and instead purported to decide the case based on solely the Petitioner's *prima*

3   *facie* allegations." Petitioner's Memorandum in Support at 22:16-22. Petitioner also argues that it

4   was "especially unreasonable" for the Court of Appeal to have denied Petitioner's claim without

5   granting Petitioner an evidentiary hearing. *Id*. at 24:1-3. Finally, Petitioner sums up his argument

6   by saying "when a state court, in the guise of determining whether a habeas petitioner has made out

7   a *prima facie* case sufficient to justify the issuance of an order to show cause, instead makes

8   unfounded factual findings and draws inferences *against* the petitioner, the petitioner is entitled to

9   relief in federal court." *Id*. at 24:12-16. (emphasis in original).

10   Petitioner argues that the "Ninth Circuit's jurisprudence teaches that when a petitioner's

11   constitutional claims turn on such fundamental factual matters, the facts must be resolved in a

12   reasonable manner — that is, by way of an evidentiary hearing." Traverse at 3:5-7. Petitioner

13   primarily relies on *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003), as support for his

14   position. This Court finds that *Nunes* does not legally or factually compel the result for which

15   Petitioner argues. The holding of *Nunes* does not require a state appellate court to offer an

16   evidentiary hearing in every case in order for the state court decision to be considered "reasonable."

17   Nor does this Court find comparable the factual findings made by the state court in *Nunes* and the

18   findings the Court of Appeal made in this case.

19   Nunes was charged with one count of murder and three counts of assault with a firearm for

20   the shooting of a man he found sleeping in his estranged wife's bedroom. The first two of Nunes'

21   trials ended in hung juries. The third trial ended with a conviction, which was reversed on appeal.

22   Before Nunes' fourth trial, the prosecutor made a plea offer to Nunes' counsel. Nunes claims that

23   his attorney told him incorrectly what he was being offered; that his counsel told the prosecutor

24   that Nunes had rejected the plea bargain; and that by the time Nunes finally could reach his counsel

25   to clarify the offer after the start of his trial, the offer had already expired. Nunes' fourth trial ended

26   in a conviction. *Nunes,* 350 F.3d at 1049-50.

27

28

United States District Court
For the Northern District of California

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

Nunes challenged his conviction on direct appeal and also by way of a state court petition for a writ of certiorari. Nunes claimed that his counsel had provided ineffective assistance by failing to inform Nunes fully of the terms of a plea offer. The Court of Appeal rejected Nunes' claim. The Court of Appeal found it unnecessary to hold an evidentiary hearing because Nunes had not established a *prima facie* case for prejudice--"that but for counsel's deficient performance, the defendant would have accepted the plea bargain." *Id.*

Nunes filed a Section 2254 petition in the federal district court in the Northern District of California. The magistrate judge assigned to the case held a two-day evidentiary hearing on Nunes' ineffective assistance claim, after which the magistrate judge recommended that Nunes' petition be granted, concluding that the state court ruling was (1) erroneous and (2) contrary to federal law as clearly established in *Strickland v. Washington*, 466 U.S. 668, 690-93 (1984). The district court adopted the recommendation, and the respondent appealed.

On appeal, the Ninth Circuit found that the state court of appeal had acted unreasonably by rejecting Nunes' habeas petition. The Ninth Circuit focused on the state court's findings that: (1) the materials Nunes had included in the record were "of dubious relevance" and (2) that the state court of appeal had rejected as "simply not credible" Nunes' claim that he could not reach his attorney to clarify the plea offer. The state court had also found on the record that Nunes failed to demonstrate that he would have accepted the state's plea offer had his attorney communicated it to him accurately. The Ninth Circuit took the state court to task for having "eschewed an evidentiary hearing on the basis that it was accepting Nunes' version of the facts" when the state court had clearly discredited Nunes' credibility and rejected his assertions. *Id.* at 1055 n. 7.

While the Ninth Circuit in *Nunes* found that the state court had acted unreasonably in not holding an evidentiary hearing, *Nunes*, and the subsequent Ninth Circuit case *Lambert v. Blodgett*, 393 F.3d 943, (9th Cir. 2004), make clear that holding an evidentiary hearing is not a *per se*

requirement for a state court to reasonably determine that a petitioner's allegations are not credible or do not justify relief. *Nunes,* 350 F.3d at 1055; *Lambert v. Blodgett*, 393 F.3d at 969 (Ninth Circuit specifically "declines to accept Lambert's proposal to inject an 'evidentiary hearing' requirement as a pre-requisite to AEDPA deference"). [6]

In *Lambert*, the Ninth Circuit reiterated that district courts must extend deference to state court decisions, and further explained the level of review for questions of fact, questions of law, and mixed questions of law and fact:

> We summarize the layers of review mandated by AEDPA as follows: First, challenges to purely factual questions resolved by the state court are reviewed under § 2254(d)(2)[7]; the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record . . . challenges to mixed questions of law and fact receive similarly mixed review; the state court's ultimate conclusion is reviewed under § 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1).

*Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).

In the instant case, the reasonableness of the Court of Appeal's decision then, is not as Petitioner has suggested, simply a question of whether or not the Court of Appeal held an evidentiary hearing. Rather, the issue is whether or not the Court of Appeal's view of the record absent an evidentiary hearing was objectively reasonable in its finding of no prejudice. *Williams*, 529 U.S. at 409-11. As the Court of Appeal noted, under *Lafler,* its duty was to assess whether

---

[6] Neither do the two other cases cited by Petitioner compel a different finding. In *Lafler v. Cooper*, 132 S. Ct. 1376, 1389 (2012), the Supreme Court held that "the court **may** conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." (emphasis added); *Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006) (Ninth Circuit "satisfied that state court fact determinations are reasonable without an evidentiary hearing, as here, where the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility.")

[7] Although Petitioner argues that no deference should be given to the factual findings of the state court because the state court did not hold an evidentiary hearing, *Lambert* makes clear that this is not the correct legal standard. *Lambert* clarifies that § 2254(e)(1), on which Petitioner implicitly relies in making this argument, applies only to fact-based challenges founded on evidence raised for the first time in federal court; such is not the case here. *Id.* at 978.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Petitioner had met his burden of proof on prejudice by demonstrating that "but for the ineffective advice of counsel there is a reasonable probability that a plea offer less severe than the sentence imposed would have been offered by the prosecution; accepted by the Petitioner; and accepted by the court." *Id.* at 1385.

Here the Court of Appeal clearly reviewed the factual record before it, as well as the three declarations that Petitioner had submitted to augment the record. On three separate occasions the Court of Appeal reiterated in its decision that, for the purposes of the petition, it was accepting as true the information contained in the declarations. Ex. F at 5 n.4 ("we accept *arguendo* the referenced factual statements in the declarations in support of the habeas corpus petition"); *id.* at 8 ("we accept for the sake of argument the gist of Karwash's declaration involving the plea bargaining"); *Id.* at 11 (relying on declaration of defense counsel to find that he misunderstood the range of potential sentences); *Id.* at 12-13 (discussing without disputing "the declarations in support of the habeas petition").

In determining whether Petitioner had met his burden of establishing a *prima facie* case of prejudice, the Court of Appeal made specific findings as to each of the steps necessary to demonstrate prejudice: (1) that the prosecutor would have offered a plea bargain of less than 18 years; (2) that the Petitioner would have accepted such a plea bargain; and (3) that the trial court would have approved the plea bargain reached by the parties. *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012). This Court reviews these findings of the Court of Appeal only for objective reasonableness.

The first issue is whether, had the parties known Petitioner's true sentencing exposure, the prosecutor would have offered a plea of less than 18 years. To make a determination on this factor, the Court of Appeal reviewed Mr. Thorman's declaration and the record of the case. Based on its

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

review, the Court of Appeal determined that the evidence overall before it supporting Petitioner's argument was too speculative.

Petitioner is adamant in his argument that the Court of Appeal's finding that the Thorman declaration was too speculative must have been unreasonable because "[a]s every lawyer who deals with the criminal justice system knows, '[t]he expected post-trial sentence is imposed in only a few percent of cases. It is like the sticker price for cars: only an ignorant, ill-advised consumer would view full price as the norm and anything less a bargain.'" Traverse at 6:6-9, citing *Lafler*, 132 S. Ct. at 1387 (in turn quoting Bibas, Stephanos, *Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 Cal. L. Rev. 1117, 1138 (2011)). Apparently to support the purported strength of the Thorman declaration, the Petitioner then offers what he believes to be the appropriate "discounted rate" for his crime.

Petitioner theorizes that since the district attorney made a pretrial offer to resolve the case with a sentence of 24 years' imprisonment, which he characterizes as a 40% "discount" on the minimum sentence as it was understood at the time, then under the properly-calculated sentencing scheme, a 40% discount, even from the maximum 24-year sentence, would have yielded a sentence of less than 15 years' imprisonment. Petitioner states that "logic compels" the conclusion that the parties, "would have been vastly more likely" to reach a deal if the prosecutor's starting position was that much closer to Petitioner's position.[8] Even Petitioner's articulation, that a deal was "vastly more likely" and the statements of Mr. Thorman's declaration, that the prosecutor "would likely" have been willing to enter into a plea agreement that called for a prison sentence of less than 18 years mirror the speculative nature of their conclusions, as reflected in the Court of Appeal's findings.

---

[8] The Court notes that this argument also presupposes that all cases where there are plea discussions ultimately reach a negotiated disposition. They do not.

17

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This Court finds that in addition to being speculation, as the Court of Appeal reasonably held, this argument ignores the underlying facts of the crimes for which Petitioner was convicted here and devalues the impact of Petitioner's actions on these specific victims. Perhaps in other crimes, "logic would compel" a more mechanical approach to plea bargaining, but the Court finds that the evidence in the record here is quite to the contrary. The record, as noted by the Court of Appeal in its findings, is replete with references to the prosecutor's sensitivity to the desires of these victims, and also the clear position the victims took in uniformly requesting at each juncture that Petitioner receive the maximum sentence he could face.

As it related to the reasonable probability that the prosecutor would have offered Petitioner a plea for a sentence of less than 18 years, the Court of Appeal made the following findings: (1) that even knowing that indeterminate sentence enhancements were not available, the prosecutor still argued that Petitioner could, and should, be sentenced to 42 years;[9] (2) that at the sentencing hearing, the prosecutor noted the suffering of the victims; (3) that the prosecutor stated that she saw "no factors . . . in mitigation"; (4) that the prosecutor requested that the judge impose "an absolute minimum" of 24 years as a sentence; and (5) that although he knew her generally, Petitioner's expert, Mr. Thorman, did not indicate that he had any personal experience negotiating plea bargains with this particular prosecutor.

The reasonableness of a state court's decision is assessed in light of the entire record that the state court had before it. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). As context to the specific findings made in the Court of Appeal decision are the additional facts of the case the Court of Appeal had before it in the appellate record. These facts include that during the final plea negotiations when Petitioner offered a sentence of 10 years, the prosecutor would not negotiate

---

[9] Petitioner argues that the prosecutor's post-conviction stance is not dispositive of what her pre-trial bargaining position would have been. Accepting that argument as true, the Court notes that even during the parties' last-ditch efforts to negotiate a plea before trial, that after consultation with the victims in the case, the prosecutor did not change her offer of 24 years.

18

without first consulting the victims, and that once she had done so, she refused to lower her original plea offer of 24 years. Moreover, the record shows that the victims in this case and their parents all testified in person or in writing at Petitioner's sentencing asking the court to impose the maximum sentence possible.[10] The prosecutor was aware that this was the position of the victims, and from her statement that after speaking with the victims she would not offer a lower plea, such awareness clearly colored her bargaining stance in this case. The totality of these facts, which are particular to this case and which cannot be ignored in evaluating what this prosecutor was "likely" to have done in this particular case, support as reasonable the Court of Appeal's findings that it was mere speculation that Ms. Torrence would have offered this Petitioner any sentence below 18 years.

In and of itself the lack of clear evidence that the prosecutor would have offered Petitioner a plea deal below 18 years dooms Petitioner's ability to carry his burden of proving prejudice and supports the Court of Appeal decision as reasonable. However, the Court of Appeal also made findings as to whether Petitioner had proven that he would have accepted such a deal.

The Court of Appeal found that Petitioner did not meet his burden to show that he would have accepted any offer below 18 years. Petitioner is correct that in evaluating whether Petitioner had proven that he would have accepted a plea, the Court of Appeal did make a credibility determination. While in many circumstances, such determination may have necessitated an evidentiary hearing, here the facts are such that an evidentiary hearing was not mandated. Of greatest importance, this Court notes that even Petitioner's own declaration does not state unequivocally that he would have accepted a sentence of below 18 years. His declaration states only that he was "unwilling to accept" a 24 year sentence and that he was "willing to **consider**" a

---

[10] While in some cases a prosecutor may be motivated to offer a plea bargain to avoid having to put the victim's through the stress of testifying, at sentencing the prosecutor read into the record a statement from one of the victims in which the victim stated that she was satisfied by the sense of closure she had from Petitioner's conviction even though she had been required to come to court many times. *See* Sentencing Trancript at 1329:4-6.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

sentence of less than 24 years. Ex.C at ¶ 9 (emphasis added). "Considering" is not the same as "accepting", and "accepting" is what is required. *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

The Court of Appeal balanced Petitioner's statement in his declaration against the other evidence in the record that after trial Petitioner told the probation officer the victims were lying and, that he "didn't accept an offer because [he was] not guilty." The Court of Appeal found that Petitioner's continued claim of innocence detracted from his position on appeal that he would have accepted a plea bargain had the sentencing advice he received been different. This Court finds that the Court of Appeal acted reasonably in determining that Petitioner did not prove that he would have accepted an offer of more than 10 years, in light of the fact that Petitioner's declaration is ambiguous on this point and in light of Petitioner's insistence even after the guilty verdict that the victims were "lying" and that he was innocent. CT 405.

Finally, the Court of Appeal held that the record did not support a finding that, had a plea offer of less than 18 years been made and accepted, the trial court would have accepted it. In this regard the Court of Appeal noted the paucity of evidence, which amounted only to Mr. Thorman's declaration which "avers no facts about the judicial standards of Judge Kurtz regarding his approval of plea agreements in sex cases." Ex. F at 12. With or without an evidentiary hearing, this particular factor might be difficult to prove. However, as the other two prejudice factors have not been met, this Court holds that the Court of Appeal's finding in this regard, while reasonable, is unnecessary to upholding the Court of Appeal's overall finding that Petitioner had not demonstrated prejudice. Given the above findings of this Court, and that the Court does not make its own determination on the facts but must uphold the Court of Appeal decision as long as it is objectively reasonable, this Court finds that Petitioner's ineffective assistance of counsel claim does not warrant habeas relief.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    The Due Process Claim

Petitioner contends that the incorrect sentencing information given to him by the trial court and by the prosecutor prior to trial violated his right to due process. The Court of Appeal denied this claim. Similar to the ineffective assistance claim, the Court of Appeal found that while "the incorrect information given in this case . . . deprived defendant of due process of law," Petitioner ultimately was unable to prove "the ultimate question" of prejudice." [11] Ex. F at 14.

The Court of Appeal's opinion notes that there is a conflict in California state court jurisprudence as to whether the prosecution or the defendant bears the burden of proof with regard to prejudice in a due process violation context. In *People v. Goodwillie*, 147 Cal.App.4th 695, 736 (2007), the Fourth District Court of Appeal held that the standard for assessing prejudice is that stated in *Chapman v. California*, 386 U.S. 18, 24 (1967). *Chapman* places the burden on the government to prove beyond a reasonable doubt that the error was harmless. *Goodwillie*, 147 Cal.App. 4th at 736. In *People v. Miralrio*, however, the Third District Court of Appeal disagreed with *Goodwillie*, holding instead that the burden of showing that a defendant would have accepted the plea bargain was on the defendant. 167 Cal.App. 4th 448, 462 (2008). In the case at bar, while the Court of Appeal noted the conflict, it held that it did not need to resolve the conflict as to the burden of proof because "[o]n this record, . . . the lack of prejudice to [Petitioner] is manifest. There is simply no basis to conclude he would have received and accepted a court-approved plea offer of less than 18 years. The allocation of the burden of proof is essentially academic." Ex. F at 15.

Petitioner contends the Court of Appeal's opinion was unreasonable "for three related reasons." Petitioner's Memo at 41:10-16. Petitioner argues that the Court of Appeal should have

---

[11] The Supreme Court has granted *certiorari* review on the question of whether a state court's harmless error determination is part of the "adjudication on the merits" that must be reviewed deferentially under 28 U.S.C. § 2254(d), but the Supreme Court has yet to issue an opinion in that case. *Chappell v. Ayala*, No. 13-1428. In the meantime this Court must determine whether there was a substantial and injurious effect on Petitioner. *Fry v. Pliler*, 551 U.S. 112 (2007).

applied the *Chapman* standard. If the Court of Appeal had applied *Chapman*, Petitioner asserts that the burden would have shifted to the government to "come forth with evidence proving beyond a reasonable doubt that no such deal would have been reached." *Id.* at 44: 7-14. Alternatively, if the Court of Appeal did in fact apply the *Chapman* standard, then its application of that standard to the facts was incorrect. Petitioner finally argues that even had the Court of Appeal applied the standard of *Miralrio*, the Court of Appeal should have found that the instant Petitioner had established prejudice. *Id.*

Respondent counters that since the Court of Appeal found the error harmless regardless of who had the burden of proof, the Court of Appeal necessarily had implicitly considered the more rigorous standard of *Chapman* and found that *Chapman* had been satisfied.

On review, the standard this Court must use to ascertain the appropriateness of the Court of Appeal's finding on due process is "whether the error had a substantial or injurious effect on the outcome" of the case. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See also, Fry v. Pliler*, 551 U.S. 112 (2007). In *Fry v. Pliler*, the United States Supreme Court makes clear that in a § 2254 proceeding, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, whether or not the Court of Appeal reviewed the error for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman. Fry,* 551 U.S. at 121. The intent of utilizing this standard is consonant with the idea that federal habeas review is reserved for "extreme malfunctions" in the state court criminal justice system. *Brecht*, 507 U.S at 634.

On the record before it and given the speculative nature of Petitioner's prejudice allegations as discussed at length above, the Court cannot find that the "substantial and injurious effect" standard has been met. Therefore, there is no basis for granting habeas review of Petitioner's due process claim.

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254

IV.     CONCLUSION

In sum, neither of Petitioner's grounds for requesting the issuance of a writ of habeas corpus warrants relief. Given the high level of deference to a state court decision required of this Court under AEDPA, this Court finds that Petitioner has failed to demonstrate that the Court of Appeal's decision denying him an evidentiary hearing was in error, or that the Court of Appeal's decision denying him relief was unreasonable. For the reasons stated above, Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is DENIED WITH PREJUDICE. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment against the Petitioner and in favor of the Respondent. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated:  May 13, 2015

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case No.: 14-CV-3166-LHK
ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C § 2254